John DRACOPOULAS, Petitioner,

v.

Seth RACHAL et al., Respondents.

No. A-11648.

Supreme Court of Texas.

Jan. 25, 1967.

Rehearing Denied March 22, 1967.

Andress, Woodgate, Richards & Condos, William Andress, Jr., Dallas, for petitioner.

Cervin & Stanford, Paul H. Stanford, Dallas, for respondents.

POPE, Justice.

The question presented is whether a real estate broker may recover commissions for a sale of real estate under a written listing agreement that was orally changed during the term of the written contract so that the time for performance was indefinitely extended, and the contract's listing provision was changed from exclusive to non-exclusive. The defendant seller urged that these changes created a contract that was partly in writing and partly oral in violation of The Real Estate License Act, art. 6573a, § 28, Vernon's Ann.Tex.Civ.St. The trial court rendered judgment upon a verdict for the plaintiffs and awarded them $3,000.00 as their commission. The court of civil appeals affirmed. Dracopoulas v. Pixley, 405 S.W.2d 435. We reverse the judgment of the courts below and render judgment that plaintiffs take nothing.

Plaintiff, Seth Rachal, a licensed real estate broker and John Dracopoulas, owner of the property in question, signed a written real estate listing contract on March 17, 1962. Dracopoulas agreed to pay a six per cent commission to Rachal or any member

of the Dallas multiple listing service "who may act in association with Broker (Rachal) in procuring or attempting to procure a purchaser" of Dracopoulas' property which was described in the agreement. The contract's term was for a sixty-day period commencing on March 17, 1962, and granted Rachal an exclusive agency and an exclusive right to sell. It provided further that Rachal would be entitled to a commission if within ninety days after the termination of the contract, Dracopoulas sold or exchanged the property to any person with whom Rachal or any member of the multiple listing service had negotiated during the life of the contract, provided that within five days after the contract ended Rachal furnished seller a list of persons with whom he had negotiated.

Rachal does not contend that he is entitled to a commission because he complied with the terms of the original written contract. That contract expired on May 16, 1962, and no exchange of property was made until more than eight months later. Rachal does not, therefore, contend that within ninety days from the termination of the contract a sale or exchange was made to anyone procured by him or a member of the multiple listing service.

Rachal says that he and Dracopoulas orally agreed to an extension of the term of the listing agreement. Rachal obtained a favorable jury finding that Dracopoulas, at a time when the written contract was in force, orally agreed to an extension of the term of the original written agreement for an indefinite period. Dracopoulas was introduced to Henry Pixley by plaintiffs Rachal and Bell in September 1962, more than four months after the expiration of the original agreement. After unsuccessful negotiations, Dracopoulas and Pixley in October ended their efforts to make a trade. Four months later, in February 1963, through the efforts of a different agent who was not associated with Rachal or Bell, Dracopoulas traded his property for property belonging to Pixley. Dracopoulas paid

a commission to the agent who effected the trade. Dracopoulas urges that the oral agreement to extend the terms of the original contract was in violation of The Real Estate License Act. This is the controlling issue in the case. Section 28 of art. 6573a provides:

"No action shall be brought in any court in this State for the recovery of any commission for the sale or purchase of real estate unless the promise or agreement upon which action shall be brought, or some memorandum thereof, shall be in writing and signed by the party to be charged therewith or by some person by by him thereunder lawfully authorized."

The Real Estate License Act, like the statute of frauds, has for its purpose the prevention of frauds by requiring claims for commission in real estate transactions to be in writing. Denman v. Hall, 144 Tex. 633, 193 S.W.2d 515 (1946); Moorman v. Harris, 217 S.W.2d 182, 183 (Tex.Civ.App. 1949, no writ). Parties to a written contract that is within the provisions of the statute of frauds:

"* * * may not by mere oral agreement alter one or more of the terms thereof and thus make a new contract resting partly in writing and partly in parol, the reason for the rule being that, when such alteration is made, part of the contract has to be proven by parol evidence, and the contract is thus exposed to all the evils which the statute was intended to remedy." Robertson v. Melton, 131 Tex. 325, 115 S.W.2d 624, 118 A.L.R. 1505 (1938).

An exception to the stated rule permits the parties to a written contract to agree orally to extend the time of performance of a contract required to be in writing, so long as the oral agreement is made before the expiration of the written contract. Gulf Production Co. v. Continental Oil Co., 139 Tex. 183, 164 S.W.2d 488 (1942); Bullis v. Noyes, 75 Tex. 540, 12 S.W. 397, 402 (1889); Watkins v. Arnold, 60 S.W.2d 476

(Tex.Civ.App.1933, writ ref.); 27 Tex.L. Rev. 268 (1948).

■ The oral agreement before us does more than merely extend the term of the contract. The termination date of the listing contract is the hinge upon which still other contractual rights and duties turn. The written contract had provisions which obligated Dracopoulas to pay Rachal a commission if a sale or exchange was effected within ninety days after the written agreement terminated, provided Rachal within five days after such termination date mailed to Dracopoulas a list of persons who were prospects with whom he had negotiated. The oral extension for an indefinite period of time rendered indefinite the termination date of the oral contract. The oral extension for an indefinite period effectively destroyed the provisions of the written contract which fixed a ninety-day limitation period after the contract expired during which Rachal would be entitled to his commission in the event of a sale to a person he had procured. It destroyed Dracopoulas' immunity from a commission claim on a sale after ninety days even to persons Rachal had procured. It destroyed Rachal's contractual duty to provide the seller within five days after the end of the contract with the names of persons with whom he had negotiated. This is evidenced by the fact that Rachal, more than four months after the original contract terminated, presented Pixley, the buyer, to Dracopoulas. Their first negotiations ended in failure and it was another four months later that negotiations were again resumed. The oral extension for an indefinite period, therefore, effectively changed two other provisions of the written contract which materially affected the broker's right to a commission. We regard this as an oral agreement which violates the requirement that the promise or agreement to pay a real estate broker's commission must be in writing.

■■ In addition to the oral changes already mentioned, Rachal asserts that Dracopoulas orally agreed to change the written contract's listing provision from exclusive to non-exclusive. Under an exclusive listing agreement, Rachal would be entitled to a commission regardless of who made or procured the sale. Neece v. A. A. A. Realty Co., 156 Tex. 614, 299 S.W.2d 270 (1957); Holmes v. Holik, 238 S.W.2d 260 (Tex. Civ.App.1951, writ dism.); 9 Tex.Jur.2d Brokers § 72. Rachal did not base his claim to a commission on the written exclusive listing agreement. On the contrary, Rachal, in conformity with his theory of an oral non-exclusive agency, requested and obtained a jury finding that he was the procuring cause of the exchange of property between Dracopoulas and Pixley. Therefore Rachal's suit was based on a new oral agreement which expressly violated the requirement of art. 6573a, § 28 that "the promise or agreement upon which action shall be brought * * * shall be in writing and signed by the party to be charged therewith". The law does not recognize or enforce such agreements. Dickey v. Bird, 366 S.W.2d 859 (Tex.Civ.App.1963, writ ref. n. r. e.); Parks v. Underwood, 280 S.W.2d 320 (Tex.Civ.App.1955, writ ref. n. r. e.).

Rachal relies upon Garcia v. Karam, 154 Tex. 240, 245, 276 S.W.2d 255 (1955) and its holding that a written real estate sales agreement which provided that a consideration of $20,000 would be paid by merchandise at invoice could be orally changed to that same amount but without inventory. This court held that the consideration for a real estate contract does not have to be in writing to comply with the statute of frauds, and that the method of paying the consideration could be orally changed. *Karam* does not control our decision since the "promise or agreement" here sued upon is Rachal's right to a commission which The Real Estate License Act requires to be stated in writing. The oral agreements which Rachal relies upon made material changes in the original written contract and are essential to Rachal's right to recovery. They violate the requirements of The Real Estate License Act. Buratti & Montandon

v. Tennant, 147 Tex. 536, 218 S.W.2d 842, 9 A.L.R.2d 742 (1949).

The judgments of the courts below are reversed and are rendered that plaintiffs take nothing.